LYONS & FLOOD, LLP
Attorneys for Plaintiff
One Exchange Plaza
55 Broadway, Suite 1501
New York, NY 10006
(212) 594-2400

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOUCHARD TRANSPORTATION COMPANY, INC.,<br><br>                                Plaintiff,<br><br>            -against-<br><br>XL CATLIN LLOYD'S SYNDICATE 2003, XL SPECIALTY INSURANCE COMPANY, and NAVIGATORS INSURANCE COMPANY,<br><br>                                Defendants. | Docket No. __ -cv- ___<br><br>**COMPLAINT** |

Plaintiff BOUCHARD TRANSPORTATION COMPANY, INC., by its attorneys Lyons & Flood, LLP, complaining of the above-named Defendants, XL CATLIN LLOYD'S SYNDICATE 2003, XL SPECIALTY INSURANCE COMPANY, and NAVIGATORS INSURANCE COMPANY (collectively the "H&M Defendants"), alleges upon information and belief as follows:

**JURISDICTION AND VENUE**

1.      This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  Specifically, this action concerns claims arising under a marine hull and machinery insurance policy on a tug and barge.

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1333.

3.  This Court has personal jurisdiction over H&M Defendants by virtue of the terms and conditions of the Hull and Machinery policy dated June 19, 2017, between Plaintiff and H&M Defendants (the "Hull Policy").  The Hull Policy contains, in relevant part, the following Institute Service of Suit clause:

> **INSTITUTE SERVICE OF SUIT CLAUSE (U.S.A.) (1/11/92)**
>
> It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, <u>will submit to the jurisdiction of a court of competent jurisdiction within the United States of America</u>.
>
> …
>
> **LAW & PRACTICE CLAUSE**
>
> In the event of the Assured exercising the option under this clause, it is hereby noted and agreed that New York Law Practice and Jurisdiction shall apply notwithstanding any other provisions contained in this insurance.

4.  This Court is the proper venue for this proceeding in accordance with 28 U.S.C. § 1391(b).

5.  This action arises out of common law and facts that exist in the action pending in this Court entitled <u>Bouchard Transportation Company, Inc. v. Travelers Property Casualty Company of America, *et al.*</u>, Docket No. 1:18-cv-08924 (SHS) (the "Bouchard v. Travelers Action") and should be consolidated with the Bouchard v. Travelers Action for all purposes pursuant to Rule 42 of the Fed. R. Civ. P.  Eight of the nine Defendants in the Bouchard v. Travelers Action are marine underwriters on the same Hull Policy as the Defendants in this action.

## PARTIES

6.     Plaintiff is a corporation organized under the laws of the State of New York with its principal place of business at 58 South Service Road, Melville, NY 11747.

7.     Defendant XL CATLIN LLOYD'S SYNDICATE 2003 ("XL CATLIN") is organized under the laws of the United Kingdom with its principal place of business at 1 Lime Street, London ECBM 7HA, United Kingdom.

8.     Defendant XL SPECIALTY INSURANCE COMPANY ("XL SPECIALTY") is a company incorporated and existing under the laws of the State of Delaware with its principal place of business at 70 Seaview Avenue, Seaview House, Stamford, CT 06902.

9.     Defendant NAVIGATORS INSURANCE COMPANY ("NAVIGATORS") is a company incorporated and existing under the laws of the State of New York with its principal place of business at 400 Atlantic Street, Stamford, CT 06901.

## FACTUAL ALLEGATIONS

10.     At all material times, Plaintiff BOUCHARD TRANSPORTATION COMPANY, INC. was the owner of the tug BUSTER BOUCHARD (the "Tug") and the barge B. No. 255 (the "Barge").

11.     On or before June 19, 2017, Plaintiff entered into a maritime contract with H&M Defendants for hull and machinery insurance on the Tug and Barge (the "Hull Policy").

12.     The Hull Policy contains American Institute Hull Clauses dated 2nd June 1977, with amendments noted in a cover note. The amendments include the Institute Service of Suit Clauses (U.S.A.) 1.11.92 quoted above. The Hull Policy provides Plaintiff with marine insurance coverage for the losses which are at issue in this action and which are also at issue in the Bouchard v. Travelers Action noted above.

13. On October 20, 2017, the Tug and Barge were on a voyage from Saint James, LA to Corpus Christi, TX. The Barge was loaded with approximately 133,000 barrels of crude oil, when at 4:30 a.m., whilst approximately three miles off Port Aransas, TX, there was a contemporaneous explosion and fire in its fore peak tank (the "Incident").

14. The Incident resulted in substantial damage to the Barge, as well as oil pollution and the death of two crewmembers.

15. Plaintiff arranged for prompt assistance and firefighting tugs arrived on the scene at approximately 7:30 a.m. The fire was declared fully extinguished by 12:10 p.m. on October 20, 2017.

16. Plaintiff gave prompt notice of the incident to Travelers Property Casualty Company of America ("Travelers") as the claims leader under the Hull Policy.

17. Signet Maritime provided salvage operations both at sea and in port. The salvage operations were supervised by a salvage master from Donjon-Smit.

18. On October 25, 2017, the Barge was moved to Ingleside, TX, where it remained until November 1, 2017, when it was finally shifted to Gulf Copper & Manufacturing Corp. ("Gulf Copper") repair yard in Port Aransas, TX.

19. At Gulf Copper, the Barge underwent temporary repairs and extensive cleaning of the ballast and cargo tanks. The barge was moved to VT Halter Marine yard in Mississippi in early March 2018.

20. Subsequently, the Barge was moved to Universal Environmental Solutions, LLC ("UES") in Tampa, FL to undergo permanent repairs.

21. Sometime in the fall of 2017, Atlantic Marine Associates Inc. ("AMA") was appointed to represent H&M Defendants in attending various shipyards, negotiating contracts

with the shipyards, overseeing and reviewing repair costs, and communicating with and approving and withholding payment of invoices submitted by third-party providers for services rendered to Plaintiff.

22. As a result of the incident, Plaintiff received invoices from Signet Maritime, Gulf Copper, UES, and other service providers (jointly referred as the "Third-Party Service Providers") in the amount of approximately $3.4 million.  Although H&M Defendants, through AMA, paid for some of the Third-Party Service Providers' invoices, H&M Defendants declined to reimburse Plaintiff for expenses incurred in the amount of $3,480,769.34, plus interest.

23. Plaintiff acted at all times as a "prudent uninsured" in settling the Third-Party Service Providers' invoices.

24. Plaintiff kept Travelers informed of developments as the matter proceeded and submitted a claim under the Hull Policy to H&M Defendants for reimbursement for expenses incurred.

25. To date, however, despite its demands for payment, H&M Defendants have failed to pay Plaintiff all monies that are due and owing.

26. The cost of repairing the barge exceeds its value after repairs.  Consequently, Plaintiff is also entitled to recover the Agreed Value of $18,000,000 set forth in the Hull Policy, and makes demand for same.

27. At a minimum, Plaintiff is entitled to recover the loss of market value of the barge and/or the reasonable cost of repairs, whichever is greater.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**

28. Plaintiff repeats and incorporates by reference herein the allegations in paragraphs

1 through 26 of the Complaint as if set forth herein.

29.     Plaintiff has performed all of its obligations under the Hull Policy and acted as a "prudent uninsured" in settling the Third-Party Service Providers' invoices.

30.     Under the terms and conditions of the Hull Policy, H&M Defendants are obligated to reimburse Plaintiff for all of the expenses it incurred as a result of the explosion and fire in the amount of $3,480,769.34, plus interest.

31.     Despite due demand, H&M Defendants have failed to pay Plaintiff the full insurance proceeds to which it is entitled.

32.     As of the date of filing of this Complaint, no part of the outstanding amount due to plaintiff has been paid although duly demanded.

33.     H&M Defendants have also failed to pay the Agreed Value of the Barge and/or the loss of market value of the barge and/or the reasonable cost of repairs (unrepaired damages), as required by the Hull Policy.

34.     The non-payment of Plaintiff's claim constitutes a breach of the terms and conditions of the Hull Policy between Plaintiff and H&M Defendants for which H&M Defendants are liable.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Breach of the Covenant of Good Faith and Fair Dealing)**

35.     Plaintiff repeats and incorporates by reference herein the allegations in paragraphs 1 through 33 of the Complaint as if set forth herein.

36.     Plaintiff has fully complied with all of the terms and conditions of the Hull Policy and has performed all conditions precedent to coverage thereunder or been excused from such performance.

37. Acting either directly or through AMA as its agent, H&M Defendants interfered with contractual relations between Plaintiff and the third-party vendors with whom Plaintiff contracted to perform repair and attendant services by refusing to pay for services rendered for damages sustained to barge B. No. 255 per the Hull Policy by alleging that the repairs undertaken were excessive or substandard.

38. H&M Defendants also attempted to change the agreed value of barge B. No. 255 after the incident by eliciting Plaintiff's broker to submit a new valuation.

39. Without Plaintiff's authorization or consent, H&M Defendants undertook to prepare repair specifications for the barge, submitted those specifications to two shipyards, obtained bids from same, thereafter demanded that Plaintiff sign a repair contract with one of the yards, and issued a reservation of rights letter against Plaintiff for its failure to execute the proposed shipyard repair contract.

40. Because of delays in payment by H&M Defendants and continuing issues attendant to claims handling, which jeopardized Plaintiff's financial solvency, Plaintiff ultimately decided to scrap the Barge to cut its losses.

41. H&M Defendants' conduct amounts to a breach of the covenant of good faith and fair dealing that H&M Defendants owed to Plaintiff.

42. Plaintiff seeks the recovery of all damages sustained, both direct and indirect, as a result of H&M Defendants' breach of said covenant, including the recovery of attorney's fees and all consequential damages.

WHEREFORE, Plaintiff prays:

a. That judgment may be entered in favor of Plaintiff against H&M Defendants in

the amount of $21,480,769.30, together with interest, costs and attorneys' fees; and

    b.    For such other and further relief as this Court may deem just and proper.

Dated:  January 7, 2019

                              Respectfully submitted,

                              **Lyons & Flood, LLP**

                              Attorneys for Plaintiff

                By:    /s/ Kirk M. Lyons
                          Kirk M. Lyons
                          One Exchange Plaza
                          New York, New York 10006
                          (212) 594-2400